Filed 12/31/14  In re M.V. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.V., a Person Coming Under the Juvenile Court Law. | B256023 |
| _____ | (Los Angeles County Super. Ct. No. CK76752) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| M.A., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sherri S. Sobel, Referee.  Affirmed.

Catherine C. Czar, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel for Plaintiff and Respondent.

M.A. (mother) appeals the March 20, 2014 order of the juvenile court which (1) denied her request under Welfare and Institutions Code section 388[1] to change an earlier court order terminating reunification services, and (2) terminated her parental rights (§ 366.26).[2]

Mother contends she met her burden to establish changed circumstances, the proposed modification was in the children's best interest, and the children would benefit more from a continued relationship with her than from adoption.

On the record presented, we perceive no abuse of discretion in the juvenile court's order and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Earlier proceedings.*

On May 6, 2009, pursuant to a petition by the Department of Children and Family Services (DCFS), the juvenile court declared four siblings dependent children of the court under section 300, subdivision (b). The children were ordered removed, with family reunification services and monitored visits for mother. Mother's case plan included drug rehabilitation with random testing, parental education and individual counseling.

Following a six-month review hearing, mother's visits became unmonitored. Two months later, in January 2010, the court reinstated monitored visits following an allegation that an uncle again had molested one of the sons and mother's poor judgment put the minors at risk.

In May 2010, DCFS filed a section 300 petition on behalf of a newborn sibling, alleging mother had a history of illicit drug use and had used amphetamine during her pregnancy. The juvenile court sustained the petition as to the newborn and ordered her

---

[1]     All further statutory references are to the Welfare and Institutions Code, unless otherwise specified.

[2]     The denial of a section 388 petition is appealable under section 395 (*In re Daniel C.* (2006) 141 Cal.App.4th 1438, 1444), as is an order terminating parental rights after a section 366.26 hearing. (§ 366.26, subd. (i); *In re Janee J.* (1999) 74 Cal.App.4th 198, 206.)

2

removed, ordered reunification services for mother, and also continued reunification services for the other children.

In December 2010, the juvenile court ordered the two oldest children returned to mother with family maintenance services. The two middle children were returned home in March 2011. However, their return home was short lived.

In July 2011, the children again were ordered removed after the court sustained a section 342 petition alleging domestic violence by mother's male companion, Steven G., and his physical abuse of mother's older son.

On July 12, 2012, the juvenile court ordered mother's reunification services terminated, finding that reasonable services had been provided, the minors could not be returned to mother's physical custody and no substantial probability existed they would be returned within six months. It designated the five minors a sibling group and set the matter for a section 366.26 hearing. However, the section 366.26 hearing thereafter was continued repeatedly for completion of the adoptive home study.

On January 10, 2013, over the DCFS's objection, the juvenile court granted a section 388 petition by mother, ordering unmonitored four-hour daytime visits on the weekend, on condition that mother test clean, not discuss the case with the children and not allow anyone else to be present.

On February 27, 2013, the juvenile court again ordered that visits were to be monitored, after it was reported that Steven G. had been present for a visit.

2. *The proceedings in issue*.

On October 3, 2013, mother filed the section 388 petition which is the subject of this appeal, requesting the children be returned to her care, or in the alternative, that she have restored reunification services and/or unmonitored and/or weekend overnight visits. She asserted a change of circumstances in that she had completed a drug program, was undergoing individual counseling, was receiving aftercare services and was leading a drug-free life.

On March 20, 2014, a contested hearing was held on mother's section 388 petition and on section 366.26 issues. Following testimony and argument, the court denied

mother's section 388 petition, finding "changing" but not "changed" circumstances. The court observed, "We have never been able in five years to get these kids permanence. It is disgraceful that a .26 should go to this amount of time. . . . I cannot find changed circumstances nor can I find it in the best interest to grant the 388. The 388 is denied in its entirety."

The juvenile court further found by clear and convincing evidence that the children are adoptable, and it designated Mr. and Mrs. H., with whom the five children had been living since June 2011, as the prospective adoptive parents. The juvenile court terminated mother's parental rights, finding she had failed to satisfy the beneficial parental relationship exception to the termination of parental rights.

On April 30, 2014, mother filed a timely notice of appeal from the March 20, 2014 order denying her section 388 request and terminating her parental rights.

## CONTENTIONS

Mother contends: (1) she met her burden under section 388 to establish that circumstances had changed and her request for return of the children or further services and expanded visitation was in the children's best interest; and (2) the permanent plan should be guardianship because she met her burden to establish her children would benefit more from a continued relationship with her, their birth mother, than from adoption.

## DISCUSSION

1. *No abuse of discretion in denial of mother's section 388 petition because she failed to meet her burden to establish changed circumstances which would warrant a modification of the earlier order terminating reunification services.*

    a. *General principles.*

" 'A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child.' " (*In re Mary G.* (2007) 151 Cal.App.4th 184, 205.)

4

We review the juvenile court's decision on a petition under section 388 for an abuse of discretion. The appellate court will not disturb the trial court's decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination. (*In re Mary G., supra*, 151 Cal.App.4th at p. 205.)

> b. *Mother's showing on her petition under section 388.*

On October 3, 2013, mother filed the section 388 petition which is the subject of this appeal. She sought the return of the children to her home, or alternatively, the reinstatement of reunification services with unmonitored and/or weekend overnight visits. In the petition, mother alleged, as a change of circumstances or new evidence, the following: she had completed a full drug program; she had completed individual counseling to address case issues including domestic violence; she had continued with individual counseling; she had "learned that drug use and [domestic violence] are bad and emotionally harmful for kids and that they deserve a safe home to thrive"; she was still in aftercare services, was leading a drug-free life, and her children were her life.

The supporting evidence included: a certificate of completion dated November 7, 2012, recognizing mother's participation and completion in an adult drug and alcohol treatment program; a letter indicating mother currently was enrolled in an outpatient program with individual counseling sessions; a certificate of completion dated June 13, 2013, indicating she had completed a course in skillful parenting; and a bonding study authored by Nadim Karim, Ph.D.

Dr. Karim, who conducted his assessment on September 7, 2013, reported: "Upon arriving to my office, I spent some time observing [mother's] interaction with her children. She was caring, loving, and gracious to each child. She also asked each child if they had eaten and if there was anything that she could get for them. Thereafter, she hugged and kissed each child and supervised them appropriately as they played with her and watched television."

Dr. Karim's clinical opinion was as follows: "[Mother] continues to maintain a strong attachment to her children despite their absence from her. . . . [¶] . . . [¶] In my

5

opinion, [mother] and her children maintain an exceptionally strong bond. Moreover, based on her self-reported information,[**3**] [she] has made considerable progress in relation to her desire to regain custody of her children. She stated that she is working and going to school. She also stated that she has not used methamphetamine in three years. She further stated that she has not been involved in any further relationships that have involved domestic violence. [¶] Therefore, . . . it appears as though [mother] has maintained a significant presence in her children's lives. Her children not only appear 'bonded' to their mother, but are desirous of being reunited with her."

        c. *No merit to mother's contention the evidence compels the conclusion that she established a change of circumstances.*

In arguing circumstances had changed, mother argues, inter alia, the evidence "established [she] had completed a drug treatment program and was continuing with aftercare, NA/AA meetings, and related counseling, had remained sober and was testing clean." Mother's narrative is unsupported by the record.

The juvenile court terminated mother's family reunification services on July 12, 2012. Mother filed the operative section 388 petition on October 3, 2013. In the six and a half months before mother filed the modification petition seeking resumption of reunification services, she failed to appear for no less than *ten* drug tests. She had a "no show" report on the following dates: March 19, 2013, April 8, 2013, April 25, 2013, June 3, 2013, June 19, 2013, July 8, 2013, July 24, 2013, August 5, 2013, August 22, 2013, and September 3, 2013.

Although mother had five negative drug tests *after* she filed her section 388 petition (Dec. 6, 2013, Jan. 17, 2014, Jan. 31, 2014, Feb. 26, 2014 & Mar. 7, 2014), her drug testing was obviously inconsistent during the post-reunification period. On this record, the juvenile court properly refused to find that mother's circumstances had

---

**3**     Dr. Karim admitted on cross-examination that he did not read any of the 30 reports that had been filed in this case. His document review was limited to mother's certificates and diplomas and counseling information.

changed. Instead, the juvenile court appropriately found that at best, "mother's circumstances continue to be changing[.]"**4**

Mother also relies on the fact that during the period *after* her reunification services were terminated, she completed a drug and alcohol program on November 7, 2012, completed parenting classes on June 13, 2013, and was participating in outpatient individual counseling. However, *during the period before reunification services were terminated*, mother also completed a parenting program, was enrolled in individual counseling, and repeatedly was enrolled in drug treatment programs, all to no avail.

Further, although mother had claimed in the past that she wanted no further contact with Steven G. and that she was ashamed to have put her children's custody in jeopardy by having contact with him, she continued to maintain a relationship with Steven G. during the reunification period and beyond. Steve G. was present at mother's home while the children visited her in February 2013, which led to visits again being monitored. In April 2013, mother again asserted "she has broken up with her boyfriend, Steve [G.]."

In sum, mother's circumstances after the reunification period were largely the same as they were before reunification services were terminated. We conclude the juvenile court properly found mother failed to meet her burden to show by a preponderance of the evidence the existence of changed circumstances. Therefore, it properly denied mother's section 388 petition.

        d. *It is unnecessary to address the second prong of the section 388 test.*

A parent seeking a modification under section 388 must show "*both* a change in circumstances or new evidence *and* the promotion of the child's best interests." (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157.) Because mother failed to establish changed

---

**4**     "A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests. [Citation.] ' "Childhood does not wait for the parent to become adequate." ' [Citation.]" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)

circumstances which would justify the resumption of reunification services, it is unnecessary to address the second prong of the section 388 test, namely, whether the proposed modification would promote the children's best interests.

2. *No merit to mother's contention the children would benefit more from a continued relationship with her, their birth mother, than from adoption.*

Once the section 388 petition was resolved with the denial of mother's request for return of the children or restoration of reunification services, the issue became the appropriate permanent plan for the children. Mother contends termination of parental rights would be detrimental to the children and a legal guardianship would be the appropriate permanent plan, because it would offer the children needed security and stability, while maintaining their important relationship with her.

a. *Overview.*

After reunification services have terminated, the focus of a dependency proceeding shifts from family preservation to promoting the best interest of the child including the child's interest in a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child. (*In re Jason J.* (2009) 175 Cal.App.4th 922, 935.) At a section 366.26 hearing the juvenile court has three options: (1) to terminate parental rights and order adoption as a long-term plan; (2) to appoint a legal guardian for the dependent child; or (3) to order the child placed in long term foster care. (*Id.*, at pp. 935-936.)

Adoption, where possible, is the permanent plan preferred by the Legislature. (*In re Jason J., supra*, 175 Cal.App.4th at p. 936.) At a section 366.26 hearing, the court must terminate parental rights and free the child for adoption if it determines by clear and convincing evidence the child is adoptable, and none of the enumerated exceptions applies to make termination of parental rights detrimental to the child. (§ 366.26, subd. (c)(1).) It is the parent's burden to show the applicability of one of the exceptions to adoption. (*In re Jason J., supra*, 175 Cal.App.4th at p. 936.)

Here, mother relies on the beneficial parental relationship exception to adoption set forth in section 366.26, subdivision (c)(1)(B)(i), which provides in relevant part:

8

"(c)(1) If the court determines . . . by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption. . . . *Under these circumstances, the court shall terminate parental rights unless either of the following applies*: [¶] . . . [¶] (B) The court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (Italics added.)

The beneficial parental relationship exception to adoption has been interpreted to mean "the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 575; accord, *In re Jason J., supra*, 175 Cal.App.4th at p. 936.)

On the other hand, a biological parent "who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent. [Citation.] A child who has been adjudged a dependent of the juvenile court should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree, but that does not meet the child's need for a parent." (*In re Angel B*. (2002) 97 Cal.App.4th 454, 466.)

In determining whether the parent-child beneficial relationship exception to adoption applies, the factors to be considered are: (1) the age of the child; (2) the portion of the child's life spent in the parent's custody; (3) the positive or negative effect of interaction between the parent and the child; and (4) the child's particular needs. (*In re*

9

*Jason J.*, *supra*, 175 Cal.App.4th at pp. 937-938.) For the exception to apply, the emotional attachment between the child and parent must be that of parent and child rather than one of being a friendly visitor or friendly nonparent such as an aunt. (*Id.* at p. 928.)

The *existence* of a beneficial parental relationship is a factual determination to be reviewed for substantial evidence. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314.) Whether the existence of such a relationship constitutes a "compelling reason for determining that termination would be detrimental to the child" (§ 366.26, subd. (c)(1)(B)) is a " 'quintessentially' discretionary decision" to which the abuse of discretion standard applies. (*In re Bailey J., supra*, at p. 1315.)

b. *Juvenile court properly found beneficial parental relationship exception to adoption is inapplicable.*

The juvenile court noted, "mother's relationship with the children has been up, down, back, forth, sometimes she has continued the visitation, sometimes she hasn't. . . . She has not acted in a parental role other than, as I said, seating the kids on her lap and being happy to see them. The children love their mother. That is not an issue, but it requires more than [that] . . . it has to be a parental role."

The record reflects that during the one-year period before mother's parental rights were terminated, mother's visitation consisted of only two hours per week and the visits were monitored. The brevity of the contact, as well as the fact the visits were monitored (*In re G.B., supra*, 227 Cal.App.4th at p. 1166), are not helpful to mother's position.

Although mother asserts Dr. Karim's bonding study established the children had an " 'exceptionally strong bond' " with her, the juvenile court gave Dr. Karim's opinion little weight. As noted, Dr. Karim did not read any of the numerous reports that had been filed in this matter, and he derived his assessment from spending 30 minutes interviewing mother, 15 to 20 minutes interviewing the oldest child, 15 to 20 minutes interviewing another child, observing the interaction between mother and the children and asking general questions such as "are you happy to see your mom again?" It is the juvenile court's role to assess the credibility of the various witnesses, to weigh the evidence and to

10

resolve the conflicts in the evidence.  (*In re Mickel O*. (2011) 197 Cal.App.4th 586, 615.)
We cannot reweigh the evidence which the juvenile court found insubstantial.

The fact the children were happy to see their mother, without more, does not bring this fact situation within the beneficial parental relationship exception to adoption.  The eldest child, who was nearly 13 at the time of the termination hearing, expressed her desire that she and her siblings be adopted by their foster parents, and said that she would "be terrified, scared, and disappointed" if they went back to mother.  As for the four other siblings, they have spent much or most of their lives outside mother's custody.  On this record, the juvenile court properly concluded that while the children "love [their mother], that relationship is not such that we should deny these children the permanence that they probably should have had three years ago."

## DISPOSITION

The March 20, 2014 order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, J.[*]

We concur:

KITCHING, Acting P. J.

ALDRICH, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.