47 Cal.Rptr.3d 137 (2006)
141 Cal.App.4th 1438
In re DANIEL C. et al., Persons Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
Mary C. et al., Defendants;
Stephen L. et al., Objectors and Appellants.
No. D047409.
Court of Appeal of California, Fourth District, Division One.
August 10, 2006.
*138 Linda Rehm, under appointment by the Court of Appeal, for Objectors and Appellants.
John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, Gary C. Seiser, Deputy County Counsel, for Plaintiff and Respondent.
Robert Wayne Gehring, under appointment by the Court of Appeal, for minors.
McCONNELL, P.J.
Stephen L. and Alice L. (the L.'s), the dependent minors' de facto parents, appeal orders denying their posttermination Welfare and Institutions Code[1] section 388 petitions seeking return of the minors to their care. They contend the juvenile court abused its discretion by not granting a hearing, as they made a prima facie showing of changed circumstances and that the modification would be in the children's best interests. The San Diego County Health and Human Services Agency (the Agency) asserts we should dismiss the appeal as under section 366.28 the L.'s were required to proceed by way of a petition for writ relief. In accordance with our opinion in In re Shirley K. (2006) 140 Cal.App.4th 65, 43 Cal.Rptr.3d 897 (Shirley K.), we hold the court's ruling is appealable under section 395 and section 366.28 is inapplicable. On the merits, we find no abuse of discretion and affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND
In November 2002 the Agency filed petitions on behalf of Mary C.'s children, Daniel C., S.C., Sadie C. and Patrick W., Jr., who then ranged in age from approximately four and one-half years to seven months. *139 The petitions alleged Mary requested that the Agency take the children into protective custody because they were exposed to violent confrontations between her and her boyfriend, Patrick W., Sr., the presumed father of Patrick Jr. and Sadie, and she was unable to protect herself from the abuse or cope with caring for four children.
Mary and Patrick, Sr., were given case plans, but at the six-month review date the Agency recommended the termination of reunification services and the scheduling of a selection and implementation hearing under section 366.26. The parents had not complied with their plans. Further, they had been arrested for theft and on being released from jail they left California. In late January 2003 the children had been placed with their maternal grandmother, Alice L., and her husband, and the placement was going well.
At the hearing, the court found the parents had not made substantive progress with their case plans, terminated reunification services and scheduled a section 366.26 hearing. The court continued the children's placement with the L.'s.
In its assessment report, the Agency found the children adoptable because of "their young age, good health and engaging personalities." The L.'s wanted to adopt the children, but if they were unable to do so there were several other prospective adoptive homes in San Diego County, although there were no approved homes that would accept all four children.
In December 2003 the L.'s applied for de facto parent status. The following month, the Agency recommended that the court deny the application and reconsider the matter in six months. The two oldest children, Daniel and S.C., told the social worker that the L.'s used corporal punishment. Daniel said his grandfather "`has the worstest belt,'" and S.C. said her grandmother "`uses her bare hands, but also uses the belt.'" Alice admitted spanking the children, but Stephen denied doing so. The social worker cautioned them that they may not use corporal punishment, and they agreed to comply and take classes on disciplining children. In following visits, Daniel and S.C. indicated the grandparents told them to deny being spanked. Nonetheless, in a March 2004 hearing the court granted the L.'s de facto parent status.
In a May 2004 addendum report, the Agency advised that concerns about the ability of the L.'s to care for the children "appear[ ] to have been rectified." They had attended a parenting class on discipline and were enrolled in additional parenting classes. The children reported being happy with the L.'s. At the contested section 366.26 hearing, the court terminated parental rights after finding by clear and convincing evidence that it is likely the children will be adopted. The court continued their placement with the L.'s.
In January 2005, however, the Agency removed the children from the L.'s care. When the Agency conducted an unannounced visit, their home was filthy and "[t]here were live and dead roaches everywhere [and] sitting dishes that appeared not [to have] been washed in a long time. There was a floor heater that was hot to the touch that was dangerous. There were clothes, trash and many other items all over the floor throughout the home. There were construction items, including a toilet that had standing water in the bowl outside." Further, two-year-old Patrick was holding a large pocket knife that belonged to the L.'s adopted son.
The following week the Agency conducted another unannounced visit, and conditions were even worse. "There was a fire that was reported in one of the rooms that *140 occurred the night prior. It was started by a floor heater and possibly an extention [sic] cord used improperly. The house was very messy. It had more trash on the floor, used diapers and the bugs were still all over."
In February 2005 the L.'s petitioned under section 388 for a return of the children to their care. The petitions challenged the evidentiary basis for the removal, and argued the children were bonded to each other and the L.'s, and the L.'s were meeting their special needs. In May, the court denied the petitions, but authorized the continuation of visitation for the L.'s. The court also authorized a 29-day visit between the children and a prospective adoptive family in Georgia.
In August 2005 the L.'s again petitioned under section 388 for the children's return to their care. The petitions stated the L.'s had eliminated all safety hazards from their home and the visitation in Georgia was unsuccessful and the children were back in San Diego in different placements.
The Agency agreed the Georgia visit was unsuccessful because S.C. displayed sexual behavior. Further, after returning to San Diego she displayed such behaviors in her foster home. When she had a fever, S.C. continuously repeated that she hated her grandfather. Neither S.C. nor Sadie wished to see the L.'s. Daniel occasionally wanted to visit them, but he expressed anger that they did not prevent their 12-year-old son from repeatedly hitting Daniel during visits. Social workers reported that during visits the L.'s discussed the case in front of the children, criticized the foster parents and did not adequately supervise the children. The Agency had not approved the L.'s for adoption and noted "[t]here is no evidence that their situation has changed and that they could provide a stable, safe, clean and emotionally nurturing home for the children."
In an addendum report, the Agency advised that Daniel and S.C. said Alice gave the children Nyquil when they had trouble sleeping. Daniel said he did not miss the L.'s. When S.C. was asked if she missed them, she shrugged her shoulders and did not respond. During a visit between the children and the L.'s at Polinsky Children's Center (Polinsky), which was supposed to be supervised but was not, the children were out of control and did not listen to the L.'s. Daniel refused to attend another scheduled visit.
At a hearing on September 15, 2005, the court issued orders denying the section 388 petitions, explaining it could not make a prima facie finding that the Agency abused its discretion in placement issues. Accordingly, there was no evidentiary hearing.

DISCUSSION

I

The Orders Are Appealable
The Agency urges us to dismiss the appeal, arguing the orders denying the petitions for modification under section 388 are not appealable orders and the L.'s were required to seek writ relief. The Agency relies on section 366.28, which was enacted in 2003 and provides in part: "(b)(1) After parental rights have been terminated pursuant to Section 366.26, an order by the court that a dependent child is to reside in, be retained in, or be removed from a specific placement, is not appealable at any time unless all of the following apply: [¶] (A) A petition for extraordinary writ review was filed in a timely manner. [¶] (B) The petition substantively addressed the specific issues to be challenged and supported that challenge by an adequate record. [¶] (C) The petition *141 was summarily denied or otherwise not decided on the merits."[2]
Subdivision (a) of section 366.28 states: "The Legislature finds and declares that delays caused by appeals from court orders designating the specific placement of a dependent child after parental rights have been terminated may cause a substantial detriment to the child. The Legislature recognizes that the juvenile court intervenes in placement decisions after parental rights have been terminated only in exceptional circumstances, and this section is not intended to place additional authority or responsibility on the juvenile court."
The Agency concedes that an order denying a section 388 petition is not a specific placement order. The Agency explains: "An argument can be made that a determination by the juvenile court that the Agency has not abused its discretion in its adoptive placement decision does not fall within section 366.28. Indeed, the clear language of section 366.28 would seem to mandate such an argument since the finding the Agency had not abused its discretion is not itself an order the child reside in, be retained in, or be removed from a specific placement." When a dependent child is freed for adoption, the Agency has exclusive care and control of the child, and the court reviews its placement decisions for abuse of discretion. (§ 366.26, subd. (j); Department of Social Services v. Superior Court (1997) 58 Cal.App.4th 721, 732-734, 68 Cal.Rptr.2d 239; In re Harry N. (2001) 93 Cal.App.4th 1378, 1397-1398, 114 Cal. Rptr.2d 46.)
The Agency asserts, however, that section 366.28 is ambiguous and can be interpreted to apply to the court's denial of a section 388 petition. The Agency submits that since in enacting section 366.28 the Legislature was concerned with delay, we should not rely on "the clear language of the statute," which it criticizes as "inartfully drawn." The Agency asserts that "[w]hether the juvenile court determines the Agency has abused its discretion and the Agency seeks review, or the juvenile court determines the Agency did not abuse its discretion and a different party seeks review, timely review of the . . . decision is in the child's best interest. This is true whether [it] is made in the context of a section 388 petition . . . or in some other form of hearing. . . . [A]lthough a decision by the juvenile court that the Agency has not abused its discretion in its adoptive placement decision does not fall within the plain language of section 366.28, including when made through a denial of a section 388 petition, it falls within the legislative intent of section 366.28."
After the Agency submitted its respondent's brief in this case, we rejected the same argument in Shirley K., supra, 140 Cal.App.4th at page 71, 43 Cal.Rptr.3d 897 explaining: "We decline to rewrite the statute [section 366.28]. `"Ordinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction." [Citations.]' [Citation.] A denial of a section 388 petition is appealable under section 395."
We follow Shirley K. here, and disagree with the notion that when a section 388 petition is filed after the termination of parental rights to change the placement of a dependent child, an order denying the petition is effectively an order "that a dependent child is to . . . be retained in . . . a specific placement" within the meaning of section 366.28, subdivision (b)(1). It is true that as a matter of course juvenile court orders state that all prior orders not in *142 conflict remain in full force and effect, and the orders denying the section 388 petitions here include that language. In our view, however, that general language does not bring the matter within the realm of section 366.28; it is certainly insufficient to put counsel on notice that a challenge to the order must be by writ petition as opposed to appeal. A holding in accordance with the Agency's theory would create a quagmire for counsel whenever a posttermination order continued a previous placement order, regardless of the subject matter of the hearing.
Had the Legislature intended that section 366.28 apply to a posttermination order denying a section 388 petition on the ground the petition fails to state a prima facie case or fails to prove the Agency abused its discretion, it could easily have said so. Particularly given the confusion that would result, we decline to attribute an intent to the Legislature that is not apparent from the plain language of section 366.28.

II

The Court Properly Exercised Its Discretion
The L.'s contend the court abused its discretion by denying their section 388 petitions. Under section 388, a person with an interest in a dependent child may petition the court to change, modify, or set aside a previous court order. The petitioning party has the burden of showing, by a preponderance of the evidence, that there is a change of circumstances or new evidence, and the proposed modification is in the child's best interest. (§ 388, subds. (a), (c); In re Jasmon O. (1994) 8 Cal.4th 398, 415-416, 33 Cal. Rptr.2d 85, 878 P.2d 1297.)
"[I]f the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition. [Citations.] The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (In re Zachary G. (1999) 77 Cal.App.4th 799, 806, 92 Cal. Rptr.2d 20.)
"The petition is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (In re Jasmon O., supra, 8 Cal.4th at p. 415, 33 Cal.Rptr.2d 85, 878 P.2d 1297.) "`"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."'" (In re Stephanie M. (1994) 7 Cal.4th 295, 318-319, 27 Cal.Rptr.2d 595, 867 P.2d 706.) "The denial of a section 388 motion rarely merits reversal as an abuse of discretion." (In re Amber M. (2002) 103 Cal.App.4th 681, 685-686, 127 Cal.Rptr.2d 19.)
As changed circumstances, the petitions alleged the children were back in San Diego after an unsuccessful trial placement in Georgia, and the L.'s had eliminated all safety hazards from their home. As the court noted, however, the condition of the L.'s home was only one of the Agency's concerns. The court recognized the Agency had "a long term concern, with respect to corporal punishment." Further, Alice had given the children Nyquil, an alcohol-based medication for sleep, and Patrick was found with a large pocket knife kept by the L.'s son. The pictures the L.'s submitted of their home repairs, of course, did not suggest circumstances had changed pertaining to their supervision of the children. The court properly found a lack of changed circumstances.
*143 Moreover, the L.'s made no prima facie showing that return of the children to their care would be in their best interests. Regarding this prong of the section 388 test, the petitions alleged the children had lived with the L.'s for two or more years and "have a bond. The siblings would remain together." The record shows, however, that neither S.C. nor Sadie wished to see the L.'s, and although Daniel sometimes wanted to visit them, he was angry that they did not protect him from their older son's physical abuse. Visitation at Polinsky did not go well and Daniel refused a further visit. The court did not abuse its discretion by denying the section 388 petitions without an evidentiary hearing.

DISPOSITION
The orders are affirmed.
IRION, J., concurs.
BENKE, J., concurs in the result.
NOTES
[1] Statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] California Rules of Court, rules 38.2 and 38.3, effective January 1, 2005, govern the filing of writ petitions under section 366.28 to review placement orders following termination of parental rights. Here, there is no issue related to the rules as the L.'s filed no petition for writ relief.