Filed 4/21/15  In re N.V. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re N.V., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>A.V.,<br><br>　　　Defendant and Appellant. | A142904<br><br>(San Francisco City & County Super. Ct. No. JD133176) |

**I.**

**INTRODUCTION**

A.V. (appellant), the biological father of two-year-old N.V. (the minor) appeals, contending the court erred in denying his petition under Welfare and Institutions Code section 388 without holding an evidentiary hearing.[1]  Appellant asserts he made a prima facie case showing his circumstances had changed and that his requested modification—to declare him a presumed father and grant him reunification services—was in the

---

[1] All future undesignated statutory references are to the Welfare and Institutions Code.  A party may petition the court under section 388 to change, modify or set aside a previous court order.  The petitioning party has the burden of showing, by a preponderance of the evidence, that (1) there is a change of circumstances or new evidence, and (2) the proposed change is in the child's best interests.  (§ 388; *In re Jasmon O.* (1994) 8 Cal.4th 398, 414-415 (*Jasmon O.*); *In re Casey D.* (1999) 70 Cal.App.4th 38, 47 (*Casey D.*).)

1

minor's best interests.  He claims "[t]he order summarily denying Father's petition was an abuse of the court's discretion, resulting in the miscarriage of justice."  We disagree and affirm.

## II.

## FACTS AND PROCEDURAL HISTORY

The factual and procedural background of this case has been set out in detail in our recent nonpublished opinion filed on December 12, 2014, *In re N.V.* (A141323).  We quote from the factual summary in that opinion, omitting footnotes:  "The minor was born in January 2012.  The mother's boyfriend, B.T., was present at the birth.  After the minor's birth, the hospital's social worker reported that mother was planning to reside with her boyfriend, B.T., and his parents.  The mother identified B.T., instead of appellant, as the minor's biological father.

"On May 30, 2013, the San Francisco Human Services Agency (the Agency) became aware of the minor when an anonymous party reported that the minor was residing in a trailer that did not have heat, electricity, running water, or a front door.  The trailer was parked on a business property in San Francisco.  The reporting party alleged the minor was allowed to play on gravel and mother was taking drugs in the minor's presence.

"On June 18, 2013, the Agency filed a petition under Welfare and Institutions Code section 300 alleging the minor was a child described by subdivisions (b) (failure to protect), (g) (no provision for support), and (j) (sibling abuse).  The Agency's investigation revealed mother had a history of substance abuse, mental health issues, transience, criminal behavior, and that she had five other children who were not in her care or custody.  After the petition was filed, appellant contacted the Agency and stated he was the minor's father.

"In the Agency's report filed on August 1, 2013, appellant is identified as the minor's alleged father.  It was noted that appellant 'comes by [the mother's] trailer 2 to 3 times a week to check up on [the minor] and to provide the mother with supplies as needed.'  The report also indicated that appellant had unstable housing, was unable to

2

work, and did not have reliable resources to provide for the minor. At the time, appellant was scheduled to be in San Francisco Drug Court's intensive outpatient drug program for the next 6 to 12 months.

"On August 7, 2013, the Agency filed an amended petition, identifying appellant as the minor's biological father. The amended petition alleged, among other things, that appellant was unable to provide for the minor, that he was incarcerated at the time of the petition's filing, and that he had another child who was currently the subject of a dependency action and for whom he was receiving reunification services.

"A settlement conference on jurisdiction and disposition was held on August 7, 2013. Counsel was appointed for appellant and the parties were ordered to return for a detention hearing the next day.

"On August 8, 2013, the Agency filed an addendum to the initial jurisdiction report. The addendum noted mother had been unable to follow through consistently with the minor's medical appointments, had failed to take advantage of the services offered to her, and had been unable to locate stable housing. The minor was eventually placed with the minor's godparents, who had been involved in the minor's life since the minor was three days old. They had taken the minor into their home on a consistent basis when she was in her mother's custody (weeknights and on weekends), they had provided her with care and stability, and they were willing to assume guardianship of the minor if necessary. The Agency noted the godparents 'treat the minor as their own child' and the minor was 'closely bonded to the godparents.'

"On August 8, 2013, appellant filed a Judicial Council form JV–505 (Statement Regarding Parentage). In this form, appellant stated the minor and mother had lived with him from March to June 2012 and from September to December 2012. The parties entered into a stipulation on August 9, 2013, that appellant was the minor's biological father based upon DNA test results from March 6, 2013.

"On December 5, 2013, a supplemental section 387 petition was filed stating that mother was discharged from her drug treatment program due to a positive drug test. The supplemental petition also indicated appellant was unable to provide care and support for

3

the minor because he was in the San Francisco County Jail.  On December 13, 2013, a referral was completed for appellant to begin weekly supervised visits with the minor at his residential substance abuse recovery program.

"On January 14, 2014, appellant filed his first motion seeking presumed father status.  In support of the motion, appellant declared, under penalty of perjury, that he was present at the minor's birth and that the minor and mother lived with him after the minor's birth. Thereafter, they continued to live with him 'on and off in San Francisco' when mother was homeless.  Appellant also conceded to his 'great regret and frustration' he never signed the minor's birth certificate.  He claimed that prior to entering a residential treatment facility where he currently resided, he 'visited my daughter every other day since her birth with no exceptions.'  He also claimed to have provided financial assistance to the minor, although the amount was not substantial 'due to the fixed income I receive from [Social Security] disability.'

"In support of his motion for presumed father status, appellant submitted a letter from the residential drug treatment program that he had entered on December 12, 2013. The letter states appellant expressed on numerous occasions 'his daughter [has] been one of his primary source[s] of inspiration to seek recovery.'  One of the program's missions was to 'offer comprehensive services that assist in the reunification process.'  While residing there, appellant had received two supervised visits from the minor.  It was reported by the program's clinical case manager that appellant was 'attentive to her needs and there appears to be a strong bond between them.'

"Opposition was filed by the minor's counsel who indicated '[w]hile [appellant] has known [the minor], and visited her as he could, [appellant] has never assumed a parental role in her life, nor provided for her . . . day to day care, comfort and needs.  In fact, that role has been performed by [her godparents].'

"On January 22, 2014, the court denied, without prejudice, appellant's motion for presumed father status on the ground that it was conclusory in nature.  On that date, the Agency filed a second addendum report.  That report noted that appellant's parental rights had been terminated in a separate dependency matter involving another child.  The

4

Agency recommended that supportive services be provided to appellant, not for the purposes of reunification, but in order for him to improve his parenting skills 'because the minor's emotional, psychological, and social well-being would benefit . . . by building a relationship with her father.'

"On February 21, 2014, appellant's supplemental motion for presumed father status was filed, requesting an evidentiary hearing. The court held a contested evidentiary hearing on appellant's supplemental motion on March 11, 2014. The court heard testimony from two witnesses—appellant and the minor's godmother.

"In his testimony, appellant indicated, 'I want to provide for [the minor], take care of her, I want her to live with me.' He admitted that he was not present at the minor's birth and that the minor and the mother did not live with him after the minor's birth. In this respect, appellant's testimony conflicted with the declaration he submitted under penalty of perjury in support of his motion for presumed father status. He also gave a completely different account of the times he had allowed the mother and minor to reside in his home, which now added up to over a year in time, instead of just a few months. When cross-examined about the various and differing timeframes he claimed the minor and mother resided with him, appellant testified that he was not 'good with dates' and was only 'guessing [at] how long' the mother and minor stayed with him at his residence.

"Appellant also admitted he never made any effort to put his name on the minor's birth certificate, sign a voluntary declaration of paternity, or petition the family court to obtain custody of the minor, even though he knew long before these dependency proceedings began that he was the minor's biological father. He testified the only reason he obtained DNA verification of his status as the minor's biological father was to allay his mother's concerns that the minor was not his child.

"The minor's godmother testified that she got involved with the mother because the mother dated the godmother's brother at one time. The mother would call, and the godmother would pick the minor up, frequently at hotels or motels where the mother could get a voucher, and the godmother would take the minor home for the night or for the weekend. The godmother indicated that when mother lived with appellant, 'she

would stay there for as long as she can, and then she would leave and then go back, stay there, and then leave.' During the times the mother lived with appellant, the mother would still call on the godmother to care for the minor. Once or twice, appellant would come out and hand her the minor. She testified appellant would give her some diapers and formula and would always say 'if I needed anything, let [him] know.'

"On March 13, 2014, after taking the matter under submission for two days, the court denied appellant's motion for presumed father status. In doing so, the court was clearly troubled by the discrepancies between appellant's declaration filed in support of his motion seeking presumed father status and the testimony presented at the March 11, 2014 hearing. As to the minor and mother's residency with appellant, the court found that the time line 'is anything but completely clear.' However, the court held it was largely premised on 'mother's wanderlust' instead of appellant's 'proactive' efforts to build a family unit. The court also noted that appellant's paternity test, accomplished more than year after the minor's birth, was only obtained to reassure appellant's mother that the minor was indeed appellant's biological child and was not used to assert custody or as [a] means [of] getting his name on the birth certificate.

"In the end, for the court, the pivotal question came down to 'does [appellant] have a substantial familial relationship with this child?' The court observed 'there is nothing in the record that talks about [appellant's] caretaking, his hand-on caretaking of this child. Whether it's feeding, cleaning up after her, changing her diapers, bathing her, putting her to bed, playing with her. . . . And there is really nothing there.' Therefore, the court believed the 'provision of services to [appellant] here in the absence of such a relationship isn't really reuniting a family, it is attempting to create a new one.' "

We affirmed the juvenile court's order denying appellant presumed father status in our nonpublished opinion in *In re N.V.* (Dec. 12, 2014, A141323).

While *In re N.V.* was pending in this court, a status review report was filed in the superior court on July 10, 2014, in which the Agency reported the minor's mother had not maintained contact with the Agency and her whereabouts were unknown. Appellant was receiving bi-weekly supervised visitation with the minor. The Agency report

indicated uncertainty as to appellant's "capacity to parent at this time as he has not demonstrated that he is living a clean and sober life that is conducive to raising a two-year-old child." In the meantime, the minor was flourishing in her godparents' care. According to the report, "[s]ince the day of her birth [the minor] has been an integral part of the godparents' family and [they] consider [the minor] to be one of their own children . . . ." The minor calls her godparents "Mom" and "Dad." The godparents have stated they are ready to adopt the minor and provide her with a loving, stable, and healthy home.

Appellant filed his section 388 petition on August 11, 2014. He indicated he entered a residential drug rehabilitation program, Health Right 360, on March 24, 2014, and was due to graduate on September 19, 2014. He filed a declaration, which was supported by various certificates and diplomas, stating he had completed the following classes while attending Health Right 360: "Anger Management and Exploring Anger, Parenting-Nurturing Fathers curriculum, Compassionate Minds, Raising Safe Kids parenting class, Coping with Stress Triggers, Life Skills, Relapse Prevention, Wellness Recovery Action Plan (WRAP), Re-entry Workshop, Completing Overcoming Addictions, Compassion Focused Therapy, and Art Therapy." He was participating in individual therapy and continued to visit the minor every other week. He requested the court modify its previous orders by declaring him the minor's presumed father and by offering him reunification services.

The juvenile court summarily denied appellant's section 388 petition by order filed on August 21, 2014, without granting appellant an evidentiary hearing. The court's order found that appellant's section 388 petition did not state new evidence or a change of circumstances and the proposed modification does not promote the best interest of the minor. This new appeal followed.

# III.

# DISCUSSION

## A. Mootness

In a motion filed on February 9, 2015, the Agency requested that this court take judicial notice of the juvenile court's January 21, 2015 order terminating appellant's parental rights. Appellant did not oppose the Agency's request for judicial notice; and on February 26, 2015, this court granted the Agency's request for judicial notice without any determination of relevance. (Evid. Code, § 459, subd. (a).) On March 2, 2015, appellant filed a timely notice of appeal from the juvenile court's order terminating his parental rights, and that appeal is currently pending (A144353).

In its motion requesting judicial notice and again on appeal, the Agency contends the instant appeal from the trial court's summary denial of appellant's section 388 petition should be dismissed on the ground it is moot because of the subsequent order issued by the juvenile court terminating appellant's parental rights. We reject this contention.

A parent's appeal from an order denying a section 388 petition is moot if the court subsequently terminates parental rights and the parent fails to appeal from that order, because in such a case "no effective relief" is possible. (*In re Jessica K*. (2000) 79 Cal.App.4th 1313, 1315.) In this case, however, appellant has appealed from the subsequent order terminating his parental rights. Thus, a reversal of the order denying appellant's section 388 petition seeking presumed father status and reunification services could potentially affect the outcome of subsequent proceedings. Accordingly, we do not find this appeal moot and address appellant's challenge to the summary denial of his section 388 petition. (*In re Jessica K.*, *supra*, at p. 1317 [the "mother was not without an appellate remedy. . . . . . . [The] [m]other might have appealed from the order terminating her parental rights simply to preserve her right to appeal the denial of her section 388 petition"]; *In re Michelle M*. (1992) 8 Cal.App.4th 326, 330 [the "[a]ppellant's remedy was to attack the juvenile court's order terminating jurisdiction in order to raise the issues he urges before us"].)

### B.  The Denial of Appellant's Section 388 Petition

The legal principles and standard of review when a section 388 petition is denied without an evidentiary hearing were recently set out in by this division in *In re G.B.* (2014) 227 Cal.App.4th 1147.  This court explained, "[u]nder section 388, a parent may petition to change or set aside a prior order 'upon grounds of change of circumstance or new evidence.'  (§ 388, subd. (a)(1); see Cal. Rules of Court, rule 5.570(a).)  The juvenile court shall order a hearing where 'it appears that the best interests of the child . . . may be promoted' . . . by the new order.  (§ 388, subd. (d).)  Thus, the parent must sufficiently allege *both* a change in circumstances or new evidence *and* the promotion of the child's best interests.  [Citation.]"  (*In re G.B.*, *supra*, at p. 1157, original italics, fn. omitted.)

This court went on to note, "[a] prima facie case is made if the allegations demonstrate that these two elements are supported by probable cause.  [Citations.]  It is not made, however, if the allegations would fail to sustain a favorable decision even if they were found to be true at a hearing.  [Citations.]  While the petition must be liberally construed in favor of its sufficiency [citations], the allegations must nonetheless describe specifically how the petition will advance the child's best interests.  [Citations.]"  (*In re G.B.*, *supra*, 227 Cal.App.4th at p. 1157.)  The summary denial of a petition under section 388 is only appropriate if the petition "fails to state a change of circumstance or new evidence that even *might* require a change of order . . . ."  (*In re Angel B.* (2002) 97 Cal.App.4th 454, 461.)

We review a juvenile court's denial of a section 388 petition for abuse of discretion.  We "may not disturb the decision of the trial court unless that court has exceeded the limits of judicial discretion by making an arbitrary, capricious, or patently absurd determination.  [Citations.]"  (*In re E.S.* (2011) 196 Cal.App.4th 1329, 1335; *In re Daniel C.* (2006) 141 Cal.App.4th 1438, 1445.)

Appellant's section 388 petition alleged his circumstances had changed because he was maintaining consistent bi-weekly supervised visitation with the minor; and he "had made substantial progress in his residential treatment program and had completed several

9

programs and classes." Appellant should be commended for taking concrete steps to address his lengthy history of drug addiction and for displaying a genuine commitment to the minor. However, even liberally construed, appellant's petition showed that while he was making good progress, his circumstances were far from stable. Appellant had not yet completed the residential treatment program, he did not have a proven track record of remaining drug-free in the community, and there was no indication that he was ready to assume parental responsibilities for the minor or provide her with a permanent and stable home. A prima facie showing of *changing,* as opposed to *changed*, circumstances is not enough. (See *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423-424 [200 days of sobriety insufficient given long history of drug abuse]; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 [120 days of sobriety insufficient to show "real reform"].)

Appellant's section 388 petition also failed to show that a change in the case plan granting appellant presumed father status and providing him reunification services would be in the minor's best interest. A section 388 petition may be summarily denied where it fails to make a prima facie showing that the bests interests of the child will be promoted by the proposed change of order. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806–807; *In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1450–1451.) It is more difficult to show that granting a section 388 petition is in the child's best interests when the changing circumstances come after reunification services have been terminated or have been denied, at which time the child's need for a permanent, stable home is paramount. (See *Jasmon O.*, *supra*, 8 Cal.4th at p. 420; *Casey D.*, *supra,* 70 Cal.App.4th at p. 48.) "At this point in the proceedings, on the eve of the selection and implementation hearing, the [child's] interest in stability was the court's foremost concern, outweighing any interest [father] may have in reunification. [Citation.]" (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 251–252.)

Accordingly, with the case in this procedural posture, appellant did not show it would be in the minor's best interests to declare him a presumed father and order reunification services be provided for him. Those options would have delayed permanency and stability for a child who had moved from place to place because of her

mother's transiency and who was shuffled back and forth between her mother and her godparents. She was now thriving in the home of her godparents, who had provided her the only stable and nurturing home she had ever known. The minor called her godparents "Mom" and "Dad," and she considered them to be her parents. The godparents were committed to providing the minor with a permanent home. There was no prima facie showing that it was in the minor's best interests to prolong uncertainty and postpone permanency with the hope that offering appellant further services would allow him to eventually provide the minor with a safe and stable home. (See *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [summary denial of § 388 petition was proper where there was no showing of how the children's best interests would be served by depriving them of a permanent stable home in exchange for an uncertain future].)

Accordingly, the juvenile court acted well within its discretion in denying appellant's section 388 petition without holding an evidentiary hearing. The juvenile court could have reasonably found that a prima facie showing had not been made as to either changed circumstances or that modification of the court's prior orders would promote the minor's best interests.

## IV.

## DISPOSITION

The court's order denying appellant's section 388 petition is affirmed.

_____
RUVOLO, P. J.

We concur:

_____
REARDON, J.

_____
RIVERA, J.