Filed 1/12/23  In re V.A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re V.A. et al., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>M.A. et al.,<br><br>        Defendants and Appellants. | D080637<br><br>(Super. Ct. No. J519862AB) |

APPEAL from an order of the Superior Court of San Diego County, Marissa A. Bejarano, Judge.  Affirmed.

M.A. and J.A., in pro. per., for Defendants and Appellants.

Claudia G. Silva, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

This is the second appeal by maternal grandmother and grandfather (collectively, Grandparents) involving two of their grandchildren, V.A. and L.A., since the children were freed for adoption in April 2021.  In a prior

appeal, we affirmed an order denying their request for placement of the children under the relative placement preference of Welfare and Institutions Code section 361.3.[1] (*In re V.A.* (Jan. 18, 2022, D078798) [nonpub. opn.].) Thereafter, the juvenile court denied the Grandparents' petition under section 388 for an order mandating visitation with both the Grandparents and the minors' siblings, who are in the Grandparents' care. Grandparents again appeal, contending in this instance that the juvenile court failed to consider the best interests of the children in ruling on their petition. We conclude that the court properly exercised its discretion in determining that Grandparents failed to make a prima facie showing of changed circumstances. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Earlier Proceedings*

San Diego County Health and Human Services Agency (the Agency) filed a juvenile dependency petition for V.A. in September 2018 because her parents were homeless and unable to care for her. A second petition, this one concerning L.A., was filed in January 2019 because she tested positive for amphetamine at birth. Parental rights were ultimately terminated.

Both the Grandparents and V.A.'s paternal relatives (Aunt and Uncle, collectively the V's)[2] sought placement of V.A. from the beginning of this case. The Agency began the Resource Family Approval (RFA) process at around the same time for both sets of relatives. V.A. was placed with the V's

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise noted.

[2] Uncle is the biological brother of V.A.'s father. Although L.A. is not related to the V's, we refer to them as Aunt and Uncle in this opinion for ease of reference.

2

in November 2018 after they were approved as a resource family. L.A. was placed with them within days of her birth.[3]

In considering the Grandparents' RFA application, the Agency had " 'serious concerns' " about a 2004 child welfare incident involving the maternal grandmother, and initially denied approval.[4] After an appeal by Grandparents, the Agency changed its position and approved Grandparents' RFA application as a resource family in December 2020.

V.A. and L.A. have lived with the V's from the time they were infants. During this same period, Grandparents consistently visited with the girls, and the girls were able to spend time with their brothers during these visits. In August 2020, Grandparents filed a request to change the court's prior placement order, noting that the Agency had recently granted them RFA approval. In March and April 2021, the juvenile court considered Grandparents' request. The court recognized it was required to act in the best interest of the dependent children, "not in the interest of extended family members," and that "separating a child from a long[-]term primary caregiver can be deeply harmful psychologically." After expressly stating it had "consider[ed] each factor" in section 361.3, the court found "clear and credible evidence that it is in [V.A.'s] and [L.A.'s] best interest to stay in their current home" with the V's.

---

[3] Shortly after L.A.'s placement with the V's, DNA testing confirmed that V.A.'s father was not related to L.A. L.A.'s father was eventually located and confirmed as her biological parent in February 2020. Paternity is not an issue in this appeal.

[4] Given the Grandparents' prior appeal and the Agency's subsequent reversal of its position on their RFA status, it is unnecessary to discuss the details of this incident.

Based on its consideration of all the evidence, the juvenile court denied placement with Grandparents, terminated parental rights, and designated the V's as the prospective adoptive parents. After Grandparents appealed, we affirmed in an unpublished decision. (*In re V.A.*, *supra*, D078798.)

B. *Grandparents' Current Petition for Visitation Order*

In the April 2021 hearing discussed *ante*, the court provided that the V's would have discretion whether to allow visitation by the siblings and Grandparents. It noted the V's "have no issues as to visitation." The court declined to adopt a formal order and instead "encourage[d] the parties to get together to set a schedule."

In an October 2021 hearing for a post permanent plan review, the court reaffirmed its earlier decision that the V's should "remain in charge of assessing how to best facilitate visitation between biological relatives and the girls." Noting its disappointment with continuing unfounded allegations of abuse, the court said it could not find that "it would be in the best interest of the girls to order any specific visitation plan."

In March 2022, after we issued our opinion in the prior appeal, Grandparents filed a section 388 petition seeking court-ordered visitation. In their petition, Grandparents asserted they had a significant relationship with the children, but that the V's curtailed and ultimately stopped their visits. They argued that it would be in the best interest of V.A. and L.A. to reinstate visitation both with their brothers and Grandparents.

In its March 2022 report, the Agency explained that the children had been living with the V's for more than three years, that they continued to do well, and that the V's were close to finalizing their adoption of the children. The report noted, however, that the children were receiving developmental services and had been referred for therapy to address emotional distress and

4

behavioral issues they suffered after contact with Grandparents and repeated investigations into false child abuse accusations.

The Agency prepared another report in May 2022 explaining that the number of visits with Grandparents and siblings had been reduced, and the visits ultimately ended, due to the behavioral issues the children displayed following their visits. A behavioral specialist who provided services to the children reported that the girls did not fight with one another once the visits with Grandparents were discontinued. She also recommended that the children receive "higher level mental health services" because of their trauma and to help the V's address it. The V's said they are open to further contact with Grandparents and siblings if and when the children are stable enough.

The May 2022 update also noted that the Agency received multiple reports regarding the V's, which were investigated, determined to be unfounded and closed. For example, an anonymous report was made alleging V.A. and L.A. were being emotionally traumatized and physically abused in the V's home. The Agency investigated the report and closed it as unfounded. The V's expressed concerned that the Grandparents were responsible for at least some of the reports. The Agency confirmed that the grandmother filed at least one of them.

Although the Agency "generally supports" maintaining connections between children and family, "for this particular situation" its May 2022 report opposed the Grandparents' section 388 petition because it was not in the children's "best interest to have court-ordered contact with the maternal family members." The Agency stated, "It appears they have not been able to accept that the girls are not placed with them and [it is] this lack of acceptance that may have affected their interactions with the girls, either consciously or unconsciously." According to the Agency, it was

5

"commendable" that the Grandparents wanted to help the girls, but "the concern is that they appear to be the source of the children's distress." It would have been more helpful, the Agency believed, if the Grandparents had "respect[ed] the caregivers' wishes in ceasing visitation until the girls are stable and strong enough to have visits with them again." It recommended that visitation should continue be a case management decision rather than an order of the juvenile court.

At the May 2022 hearing on the section 388 petition, the court heard argument about whether Grandparents made a prima facie showing that there was a change of circumstances since the October 2021 court order giving the V's discretion in scheduling Grandparents' visitation with the children. The court also heard argument as to whether it was in the best interest of the children to change the orders.

Following argument, the court found there was no "formal visitation order" for the benefit of Grandparents. Instead, the court had "encouraged the parties to get together to determine whether or not a visitation schedule could be established." Without an existing visitation order, it was "questionable" whether there had been a change in circumstance. In any event, however, the court found it was not in the children's best interest to now order visitation because they exhibited anxiety, sleep disturbances, and behavioral struggles before and after past visits. It also noted that Grandparents admitted they had made a child welfare referral against the V's on at least one occasion. Under these circumstances, the court concluded that the Grandparents had failed to make a prima facie showing and summarily denied the section 388 petition.

DISCUSSION

Under section 388, any person having an interest in a dependent of the juvenile court may petition to change, modify, or set aside a prior order of the court. (§ 388, subd. (a)(1).) The petitioner bears the burden of alleging and ultimately proving that (1) there has been a change of circumstance or new evidence; and (2) the requested modification is in the child's best interests. (*Id*., subds. (a)(1) & (d); *In re Z.F.* (2016) 248 Cal.App.4th 68, 72-73.) However, " '[I]f the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition.' " *(In re Daniel C.* (2006) 141 Cal.App.4th 1438, 1445; see Cal. Rules of Court, rule 5.570(d).) The prima facie requirement is satisfied only when " 'the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition.' " (*Daniel C*., at p. 1445.)

Here, Grandparents contend "there was a change in circumstance when the agency transferred discretion for visitation with our granddaughters . . . from itself to the caregivers." Although Grandparents argue "[t]his resulted in termination of visitation by authority of the caregivers," the V's discretion to control visitation was explicit in the court's existing orders. Indeed, the court explicitly acknowledged in its April 2021 order that it was not mandating visitation when it stated, "*if* visitation continues," when it declined to adopt a formal visitation order, and when it instead "encourage[d] the parties to get together to set a schedule." (Italics added.) In October 2021, the court reaffirmed that the V's should "remain in charge of assessing how to best facilitate visitation between biological relatives and the girls."

7

The court did not find that "it would be in the best interest of the girls to order any specific visitation plan."

Thus, Grandparents did not meet their section 388 burden to show that, since the October 2021 order, there was " 'new evidence or that there are changed circumstances that make a change of placement in the best interest of the child.' " (*In re Michael D.* (1996) 51 Cal.App.4th 1074, 1084.) Although they argue that being prevented from visiting the children should qualify as a changed circumstance, the court always left the V's in charge of coordinating a visitation schedule and contemplated that the V's would have discretion to determine whether and, if so, when a meeting with the children would be appropriate.

Moreover, there is no indication that the V's did not comply or will not continue to comply with the court's direction that they consider whether to allow visitation in the future. In fact, the V's have stated that they "will revisit the issue at another time." As the Agency attorney explained, "Visitation has been tapered down over time to adapt to the girls' needs. It hasn't stopped forever. There's no indication that these caregivers intend for it to stop forever and the change was not really abrupt." The V's attorney acknowledged that "biological connections are important," but they "do not come at the expense of the mental health of the child." The Agency's May 2022 report similarly stated that the V's "are open to future contact with the maternal family, but only after the girls are stable and strong enough to have visits with the maternal family."

Even if the Grandparents' visitations were irrevocably terminated such that there might be changed circumstances, the juvenile court did not abuse its discretion in determining that visitation is not currently in the best interests of the children. It was reasonable for the court to rely on the

8

evidence in the record, including reports from social workers and a behavioral specialist, to deny visitation, particularly where the "petition is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415.)

The court noted that it had read and considered recent social worker's reports, including the reports from April and May 2022. The Agency's April 2022 report describes how the children "were having nightmares, anxiety and screaming after visits and video chats with maternal relatives." The May 2022 report indicates that "both girls appear to be in a trance-like state after visits" with the maternal family. Both children "show aggressive behaviors," while one of them also has nightmares. The report also states that the children "demonstrate trauma reactions when a new social worker comes to interview them when a new allegation of abuse is made." The Agency noted that in September 2021 the maternal grandmother filed a report of suspected abuse by the V's, which was investigated and closed as unfounded.

Attached to the social worker's May 2022 report is a Home Activity Plan, created by the children's behavioral specialist, which documents 11 sessions she completed to help the children "with transitioning to and from visits with relatives." It reflects the caregivers' concerns with sleep, trauma, aggression towards others, difficulty with transitions and self-regulation. The behavioral specialist set goals regarding the V's support of the children, including to provide "a lot of Special Time . . . to provide comfort and reassurance" when returning from visits and reassuring V.A. that "she is safe" when she is "going to sleep."

The court summarized: "[T]he evidence here is that when the girls do have visits with the maternal grandparents and the maternal family, that they are suffering." Based on the evidence presented, the juvenile court could reasonably find that granting the Grandparents' section 388 petition would not be in the children's best interests. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464.) Accordingly, we conclude that the juvenile court acted appropriately in denying the petition.

DISPOSITION

The order denying the section 388 petition is affirmed.

DATO, J.

WE CONCUR:

HUFFMAN, Acting P. J.

DO, J.