Filed 1/16/26  In re T.C. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re T.C. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E086406 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J297438 & J297439) |
| v. | OPINION |
| B.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, Kristina M. Robb, Deputy County Counsel, for Plaintiff and Respondent.

1

After the juvenile court terminated family reunification services for B.H. (mother) and set a hearing for selection of a permanent plan for A.C. and T.C. (the children), mother petitioned the juvenile court pursuant to Welfare and Institutions Code[1] section 388 to return the children to her custody or to order additional reunification services. Mother appeals from an order summarily denying the petition. Because mother did not make a prima facie showing of changed circumstances and best interests of the children to justify returning the children to her custody, we find the juvenile court did not abuse its discretion and affirm the order.

I.

FACTS AND PROCEDURAL BACKGROUND

On June 5, 2023, San Bernardino County Children and Family Services received a referral about T.C. when he tested positive for methamphetamine at birth. Mother told the social worker she had smoked methamphetamine three days earlier and in December 2022, before she knew she was pregnant. She reported mostly smoking "weed," but admitted she first smoked methamphetamine at age 21 or 22 and did so off and on thereafter. Mother received substance abuse treatment and services to address domestic violence during a prior dependency regarding A.C.

The children were removed from mother's custody. The juvenile court subsequently found them to be dependents of the court pursuant to section 300 and ordered that mother receive family reunification services.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

During the reporting period for the six-month review hearing, mother participated in domestic violence classes and other services but missed a total of 12 drug tests because of transportation issues. The juvenile court found mother had made insufficient progress in addressing the reasons for the dependency and ordered that she receive additional family reunification services.

Mother continued to make progress in her case plan, completed an outpatient drug treatment program, and moved into a sober living home during the reporting period for the 12-month status review hearing. However, she missed 18 additional drug tests and tested positively for drugs twice. The juvenile court once more found that mother's progress at alleviating the reasons for the dependency was insufficient and ordered that mother receive additional family reunification services.

During the 18-month status review reporting period, mother was arrested for receiving stolen goods and for possession of methamphetamine. Mother missed another 18 drug tests and tested positively for drugs once. Mother had been moved into a sober living facility but was removed from the program two weeks later after her positive drug test. Moreover, mother was terminated from an outpatient drug treatment program for failure to attend and failed to enroll in another program despite receiving a referral. She subsequently enrolled in an inpatient program and had been approved for a higher level of treatment because of her ongoing struggles with methamphetamine use.

At the 18-month status review hearing conducted December 5, 2024, the juvenile court found mother had been provided with adequate family reunification services, her

progress toward alleviating the reasons for the dependency was insufficient, and there was no substantial probability the children would be returned to mother within the statutory time frame. Therefore, the court terminated mother's services and set a hearing pursuant to section 366.26 for selection of a permanent plan for the children.

On June 10, 2025, mother petitioned the juvenile court to return the children to her care and custody. In the alternative, mother asked the court to reinstate her family reunification services, order unsupervised visits, and vacate the order setting a permanency hearing under section 366.26 and instead set a permanency planning review (PPR) hearing. With respect to changed circumstances, mother alleged: (1) she had been active in her substance abuse treatment program; (2) she had completed a residential treatment program and attended various groups such as anger management and NA/AA; (3) she "has been clean and has maintained sobriety"; and (4) she had enrolled in a pharmacy technician program. Inter alia, mother supported her petition with evidence that between December 4, 2024 (the day before the 18-month review hearing) and April 25, 2025, she tested negatively during twice-monthly random drug tests.

Mother alleged "[i]t would be in [the] best interest of the children to be raised by their mother who has worked toward being a better person for them." According to mother, a bonding study demonstrated "this is a family who is positively bonded to each other, and to sever the bond would be detrimental to the children." The clinical psychologist who completed the bonding study concluded there is "a substantial, positive relationship" between mother and the children and severing contact "could be

4

detrimental" to the children.  The psychologist recommended the juvenile court consider the bond between mother and the children when making any determinations regarding the children's future.

In its written order summarily denying the petition, the juvenile court found, "Mother's circumstances are changing but not changed.  Especially with the baby [T.C.], there is no evidence that granting the request is in the children's best interest."

Mother timely appealed.

II.

DISCUSSION

"'Section 388 allows a person having an interest in a dependent child of the juvenile court to petition the court to change, modify, or set aside a prior order on the grounds of changed circumstances or new evidence.  (§ 388, subd. (a).)'  [Citation.]  'A section 388 petition must make a prima facie showing of entitlement to relief in order to trigger the right to an evidentiary hearing on the petition.  [Citation.]  The petition may be denied without a hearing "only if the [petition] fails to reveal any change of circumstance or new evidence which might require a change of order."'"  (*In re R.M.* (2025) 111 Cal.App.5th 119, 136.)

"'A "prima facie" showing [under section 388] refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited.'"  (*In re R.M.*, *supra*, 111 Cal.App.5th at p. 137.)  "'[T]he petitioner must show *changed*, not changing, circumstances.'  [Citation.]  'The case law's

5

references to "changed" and merely "changing" circumstances are another way of describing the distinction . . . between changes that are material and those that are not. However expressed, the point is that section 388 requires a change that is relevant and substantial (rather than irrelevant or de minimis) when considered in light of all of the circumstances of the case.'" (*Ibid*.)

The fact circumstances might change or are changing for the better "'does not promote stability for the child or the child's best interests. [Citation.] "'[C]hildhood does not wait for the parent to become adequate.'"'" (*In re Mary G*. (2007) 151 Cal.App.4th 184, 206.) "A parent establishes a substantial change of circumstances for purposes of section 388 by showing that, during the period between termination of reunification services and the permanency planning hearing, he or she has resolved the previously unresolved issues supporting juvenile court jurisdiction." (*In re J.M.* (2020) 50 Cal.App.5th 833, 846.)

"Although the juvenile court must liberally construe the petition in favor of its sufficiency (Cal. Rules of Court, rule 5.570(a)), 'the allegations must nonetheless describe specifically how the petition will advance the child's best interests.' [Citations.] 'If a petitioner could get by with general, conclusory allegations, there would be no need for an initial determination by the juvenile court about whether an evidentiary hearing was warranted. In such circumstances, the decision to grant a hearing on a section 388 petition would be nothing more than a pointless formality.'" (*In re R.M.*, *supra*, 111 Cal.App.5th at p. 137.)

6

"In any custody determination, a primary consideration in determining the child's best interests is the goal of assuring stability and continuity. [Citation.] 'When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role. That need will often dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child.'" (*In re Stephanie M*. (1994) 7 Cal.4th 295, 317.) "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child. [Citation.] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child." (*Ibid*.)

"'We review a summary denial of a hearing on a modification petition for abuse of discretion. [Citation.] Under this standard of review, we will not disturb the decision of the trial court unless the trial court exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination.'" (*In re R.M*., *supra*, 111 Cal.App.5th at p. 137.) "'"When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."'" [Citation.] 'The denial of a section 388 motion rarely merits reversal as an abuse of discretion.'" (*In re Daniel C*. (2006) 141 Cal.App.4th 1438, 1445.)

With respect to changed circumstances, mother argues she was not required to show the circumstances that led to dependency had "completely changed," and that evidence of her progress in addressing domestic violence and, in particular, her six-month[2] sobriety at the time she filed her petition, were sufficient to require the juvenile court to conduct an evidentiary hearing on the petition. True, mother was not required to establish a *complete* change. However, because her request for a change in custody or, in the alternative, additional reunification services and unsupervised visits had "the potential to disrupt an otherwise stable placement for [the] children," she was required to show *substantial* change, meaning "'the problem that initially brought the child within the dependency system must be removed or ameliorated.'" (*In re D.B.* (2013) 217 Cal.App.4th 1080, 1093.)

"In the context of a substance abuse problem that has repeatedly resisted treatment in the past, a showing of materially changed circumstances requires more than a relatively brief period of sobriety or participation in yet another program." (*In re N.F.* (2021) 68 Cal.App.5th 112, 121; see *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 ["Appellant's recent sobriety reflects 'changing,' not changed, circumstances."].) Mother had a lengthy history of substance abuse and failure to maintain sobriety despite her participation in drug treatment programs, including those provided to her in earlier dependency proceedings. Despite making early progress in the current proceeding to

---

[2] Mother calculates the length of her sobriety at the time of the petition from November 8, 2024, the date she entered a residential treatment facility, rather than December 4, 2024, the date of her first negative drug test.

address her substance abuse and enrolling in a sober living facility, after two weeks she was kicked out of the facility for testing positive for use of methamphetamine and was terminated from an outpatient drug treatment program for nonattendance. And, during the entire 18 months that mother received reunification services, she missed numerous drug tests and tested positively three times.

Considering mother's history of treatment for substance abuse and lapses after brief periods of sobriety, the juvenile court did not abuse its discretion by concluding mother's most recent period of sobriety for five or six months (see *ante*, fn. 2) was merely a changing and not a changed circumstance. (See, e.g., *In re Amber M.* (2002) 103 Cal.App.4th 681, 686-687 [mother's "substance abuse had begun more than 17 years earlier and while she had been clean for 372 days, she had previously relapsed twice during the course of this case, once after more than 300 days of sobriety"]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423-424 [father's seven months of sobriety since his last relapse, "while commendable, was nothing new"].)

As to whether returning the children to mother's custody would be in the children's best interests, the parties address the nonexhaustive list of factors set forth in *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532: "(1) The seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to both parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been."

9

The very same court that decided *In re Kimberly F.* subsequently rejected application of those factors when, as here, the juvenile court has terminated reunification services and set a section 366.26 hearing for selection of a permanent plan, and the parent has "made no effort to establish how modification would advance [his or] her child's need for permanency and stability as required by the *Stephanie M.* decision." (*In re I.B.* (2020) 53 Cal.App.5th 133, 163.) Under those specific circumstances (see *ibid*.), the court "declin[ed] to apply the *Kimberly F.* factors if for no other reason than they do not take into account the Supreme Court's analysis in *Stephanie M.*, applicable after reunification efforts have been terminated. As stated by one treatise, 'In such circumstances, the approach of the court in the case of . . . *Kimberly F.* . . . may not be appropriate since it fails to give full consideration to this shift in focus.' [Citation.] We instead follow the direction of our Supreme Court, holding that after reunification services have terminated, a parent's petition for either an order returning custody or reopening reunification efforts must establish how such a change will advance the child's need for permanency and stability." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.)

Here, the children had been in a stable and loving placement with a prospective adoptive parent since July 22, 2023. Mother did not allege, let alone make a prima facie showing, that removing the children from that placement and returning them to her custody or providing her with an additional period of reunification services would advance the children's need for permanence and stability. While mother's recent efforts at sobriety were commendable, her ability to maintain long-term sobriety and to provide a

safe and stable home was yet unproven. And her general and conclusionary allegations that it would be in the best interests of the children "to be raised by their mother who has worked toward being a better person for them," and of a positive bond between her and the children as demonstrated during supervised visits, were insufficient to trigger an evidentiary hearing on the petition. (*In re R.M.*, *supra*, 111 Cal.App.5th at p. 137.) Therefore, on this record, we cannot say the juvenile court abused its discretion when it ruled the requested change of order would not be in the best interests of the children.

III.

DISPOSITION

The order summarily denying mother's section 388 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

FIELDS
J.

MENETREZ
J.

11