Filed 6/23/15  In re Genesis R. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re GENESIS R., a Person Coming Under the Juvenile Court Law. | B260675 (Los Angeles County Super. Ct. No. CK96986) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. A. G., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Philip L. Soto, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jessica Paulson-Duffy, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant A. G. (father) appeals from the juvenile court's order denying his petition, pursuant to Welfare and Institutions Code section 388,[1] seeking reinstatement of reunification services or placement of his daughter Genesis R. (Genesis) (born Mar. 2012). He also appeals from the court's order terminating his parental rights. We find no error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

**The Petition**

On December 17, 2012, the Los Angeles County Department of Children and Family Services (DCFS) filed a petition under section 300, subdivision (b) on behalf of then eight-month-old Genesis. As amended, the petition alleged in paragraph b-2 that father, who was 19 years old, had a history of substance abuse and was a current user of amphetamine, methamphetamine, and marijuana; tested positive for amphetamine and methamphetamine on December 3, 2012; was under the influence of illicit drugs at other times while Genesis was in his care; and his substance abuse placed Genesis at risk of harm. The petition contained nearly identical allegations in paragraph b-1 as to Genesis's mother, Marina R. (mother), who was 18 years old.[2] In paragraph b-3, the petition alleged that father and mother had a history of engaging in physical alterations in Genesis's presence; on December 1, 2012, father picked up mother, sat her on a curb, and grabbed and pulled her by the hair; and such physical conduct by father placed Genesis at risk of harm.

**The Detention Hearing**

Father and mother appeared at the detention hearing. The juvenile court found father to be Genesis's presumed father. The court ordered that Genesis remain placed in foster care until a suitable relative could be found. The court also granted monitored

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] Mother is not a party to this appeal.

2

visits three times a week for two hours, and ordered DCFS to provide referrals for drug services, including drug testing.

**The Jurisdiction and Disposition Report and Hearing**

DCFS reported that Genesis had been placed with a maternal aunt and appeared happy and comfortable. Father reported additional incidents of physical altercations with mother in September and October 2012, while Genesis was present. Father stated that he had a medical marijuana card for back pain and used marijuana every three to four days. Father tested positive for cannabinoids on January 9, 2013.

Father and mother appeared at the jurisdiction and disposition hearing on January 31, 2013. The juvenile court declared Genesis a dependent of the court and sustained the petition as amended. Genesis was to remain placed with the maternal aunt and DCFS was ordered to provide reunification services. The parents were allowed separate monitored visits at least three times a week for three hours at a time, and DCFS was granted the right to liberalize the visits to unmonitored and overnight. Father was ordered to participate in counseling to address issues pertaining to parenting, domestic abuse and drug use, and to undergo random drug testing once a week.

**Supplemental Report of the Multi-Disciplinary Assessment Team**

On March 29, 2013, DCFS reported that after one month in the care of the maternal aunt, Genesis was acclimating to routine and a consistent caretaker, she appeared happy and was showing less hyper-vigilance, and her social and fine motor skills were improving. "Since placement with her current caretakers Genesis has shown great improvements in her overall developmental functioning." It was reported that father and mother would benefit from parent coaching.

**Six-Month Status Review Report and Hearing**

On August 1, 2013, DCFS reported that Genesis was being well taken care of and that her needs were being met by her caregiver. Father was in compliance with court orders. He had completed parenting education and had enrolled in an outpatient drug treatment program. Father, however, had three positive drug tests for amphetamine and methamphetamine on May 13, June 13, and June 18, 2013.

Father was regularly visiting Genesis, and no problems were reported with the visits.

Father appeared at the hearing on August 1, 2013. The juvenile court found father to be in partial compliance with the case plan and ordered that Genesis remain placed with the maternal aunt.

**12-Month Status Review Report**

On January 30, 2014, DCFS reported that father's current circumstances were unknown because he had failed to return the social worker's calls. Father was a "no show" for 10 consecutive drug tests from August 29, 2013, through January 14, 2014. Father had had only sporadic visits with Genesis, and often missed scheduled visits without calling to cancel. The caregiver reported that following one visit, she saw father run down the street carrying Genesis. When the caregiver met father, he was sweating, bleeding from his lip, and his cheek was bruised, as though he had been in a fight since picking up Genesis for the visit. Genesis was happy with her caregiver and developing appropriately. DCFS assessed the risk level as "[h]igh" for abuse if Genesis were returned to her parents and recommended that family reunification services be terminated.

**Interim Report and Hearing**

On March 3, 2014, DCFS reported that father had not visited Genesis at all in February 2014, and failed to appear for a drug test. Father told the social worker he was homeless.

Father appeared at the hearing on March 3, 2014. The juvenile court found that neither parent was in compliance with the case plan, terminated family reunification services, and set the matter for a section 366.26 hearing.

**Section 366.26 Reports**

On June 26, 2014, DCFS reported that Genesis was thriving in the care of the maternal aunt and her partner, who were committed to adopting her and who "love[d]" her. She called them "Mama" and "Nina" and was visibly attached to them. Father visited Genesis an average of three times a month. While his visits had been liberalized to six hours, father usually stayed only three to four hours. He would often get frustrated

during visits because he expected a more mature response than a two-year-old was capable of providing. The aunt reported that Genesis did not like to be next to father and would run away.

In a supplemental report, the caregiver stated that father had limited interaction with Genesis during visits, and that she had to encourage father to interact in more positive ways, such as giving father books to read to Genesis.

DCFS submitted another supplemental report stating that the home study of the prospective adoptive parents had been approved.

**Section 388 Petition**

On October 22, 2014, the date set for the continued section 366.26 hearing, father filed a petition pursuant to section 388, seeking reinstatement of reunification services "and/or grant . . . unmonitored visits and/or return [of] Genesis" to his care. Father's petition stated that he was fully employed, had stable housing and family support, was participating in "Parents in Partnership," and visited Genesis once a week for six hours. Father also stated in his petition that a "father-daughter relationship" existed and that "it is in [Genesis's] best interest to reunify" with him. The petition attached a letter from his employer and a certification of having "attended the parent orientation" (capitalization omitted) of the "Parents in Partnership" program on July 25, 2014.

**Court's Rulings**

The juvenile court held a combined hearing on father's section 388 petition and the section 366.26 permanency planning on October 22, 2014. The court denied the section 388 petition, finding no changed circumstances and that father's requests were not in Genesis's best interest. The court then proceeded to the issue of permanency planning. The court found by clear and convincing evidence that Genesis was adoptable, and that no exception to termination of parental rights existed. The court thus terminated father's and mother's parental rights to Genesis.

DISCUSSION

## I. Section 388 Petition

Section 388 permits a parent to petition the juvenile court to change, modify or set aside a previous court order. The parent has the burden of showing, by a preponderance of the evidence, there is a change of circumstances or new evidence and the proposed modification is in the child's best interest. (§ 388; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Amber M.* (2002) 103 Cal.App.4th 681, 685.) "The petition is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Jasmon O., supra,* at p. 415; *In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'" (*In re Stephanie M., supra,* at pp. 318–319.) "The denial of a section 388 motion rarely merits reversal as an abuse of discretion." (*In re Amber M., supra,* at pp. 685–686; *In re Daniel C.* (2006) 141 Cal.App.4th 1438, 1445.) Indeed, father correctly concedes that the abuse of discretion standard is a "high hurdle" for any appealing party.

The juvenile court did not abuse its discretion in denying father's section 388 petition.

First, father did not demonstrate changed circumstances. The petition indicated that father was employed, had stable housing and a support system, and had attended a parenting program orientation back in July 2014. While these are commendable steps showing that father was trying to improve his life, they do not address the issues that brought Genesis under the juvenile court's jurisdiction. The court did not assume jurisdiction because father lacked housing or a job, but because father engaged in domestic violence and had a substance abuse problem. Nothing in his petition or the record showed that father was making any substantive progress in any rehabilitation programs to address his violent behavior and substance abuse, or that he had maintained

sobriety. To the contrary, father was still not in compliance with the programs the court had ordered him to participate in at disposition 18 months prior.

Second, father failed to demonstrate that granting his petition would be in Genesis's best interest. In addressing the best interest prong, courts generally consider "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532.) The circumstances leading to dependency here were serious—substance abuse and domestic violence—and there was no showing that these issues had been ameliorated or would be soon. Additionally, the record showed that Genesis was strongly bonded to her prospective adoptive parents, with whom she had spent the majority of her young life, while her bond with father was not nearly as strong.

"A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)

## II. Section 366.26 Findings

Appellant contends the juvenile court erred by failing to apply an exception to termination of parental rights.

Under section 366.26, subdivision (c)(1), if the court finds by clear and convincing evidence that it is likely the dependent child will be adopted, "the court shall terminate parental rights and order the child placed for adoption." An exception exists when "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

7

It is well established that a parent bears the burden of proving that termination would be detrimental to the child under section 366.26, subdivision (c)(1)(B)(i). (Cal. Rules of Court, rule 5.725(d)(4); *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350; *In re Derek W.* (1999) 73 Cal.App.4th 823, 826–827; *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1343–1344.)  This is not an easy burden to meet.  "Because a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D., supra,* at p. 1350.)

Reviewing courts have recently begun applying a mixed standard of review to an appellate challenge to a juvenile court ruling rejecting a claim that an adoption exception applies.  In *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1315 (*Bailey J.*), the appellate court applied the substantial evidence test to the factual determination of the *existence* of a beneficial relationship, and applied the abuse of discretion standard to the "'quintessentially'" discretionary decision of "the *importance* of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption."  (See also *In re K.P.* (2012) 203 Cal.App.4th 614, 622 ["We find the *Bailey J.* approach persuasive and apply its composite standard of review here"].)

Father cannot meet the first prong of the exception—showing that he maintained regular visitation and contact with Genesis.  Throughout most of the case, as father concedes, his visits were inconsistent and there were periods when he failed to visit at all.  In the period just before the section 366.26 hearing, father claims that he was visiting weekly for six hours.  But the record does not bear this out.  DCFS reported that father visited about three times a month, for three to four hours, despite being allowed to visit more frequently and for six hours at time.

Nor can father meet the second prong of the exception—showing that continuing the parental relationship would be beneficial to Genesis.  The "benefit from continuing the [parent/child] relationship" exception in section 366.26, subdivision (c)(1)(B)(i) has

8

been defined to mean that "the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) "In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Ibid.*)

"The factors to be considered when looking for whether a relationship is important and beneficial are: (1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of interaction between the parent and the child, and (4) the child's particular needs." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 467, fn. omitted; *In re Helen W.* (2007) 150 Cal.App.4th 71, 81.)

Here, Genesis was only eight months old when removed from father's custody and two and one-half years old at the time of the section 366.26 hearing. She had spent the majority of her young life with her prospective adoptive parents, who were providing her with a stable, loving and nurturing home and with whom she was thriving. By contrast, father often became frustrated with Genesis during visits, had unrealistic expectations for a child of her age, had limited interaction with her during visits, and had to be encouraged to interact in more positive ways. It was reported that Genesis did not like to be near father and would run away from him.

"A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent. [Citation.] A child who has been adjudged a dependent of the juvenile court should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree, but that does not meet the child's need for a parent." (*In re Angel B.*, *supra,* 97 Cal.App.4th at p. 466.)

9

Based on the record here, we conclude that this is not the extraordinary case where the Legislature's preference for adoption should have been overcome by the exception to termination of parental rights provided in section 366.26, subdivision (c)(1)(B)(i).

**DISPOSITION**

The juvenile court's orders denying father's section 388 petition and terminating parental rights are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
BOREN

_____, J.
HOFFSTADT