Filed 6/5/25  In re B.F. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re B.F., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> G.G., <br><br> Defendant and Appellant. | F088850 <br><br> (Super. Ct. No. JVDP-23-000050) <br><br><br> **OPINION** |

THE COURT*

APPEAL from an order of the Superior Court of Stanislaus County.  Annette Rees, Judge.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas Boze, County Counsel, and Mark Gabriel Doronio, Deputy County Counsel; Gordon-Creed, Kelley, Holl, & Sugerman, Jeremy Sugerman and Anne H. Nguyen, for Plaintiff and Respondent.

-ooOoo-

---

*       Before Detjen, A.P.J., Smith, J. and Snauffer, J.

Appellant G.G. (mother) is the mother of now eight-year-old B.F. (the child), who was the subject of a dependency case. At a 12-month review hearing in May 2024, the juvenile court terminated mother's family reunification services. In September 2024, mother filed a petition under Welfare and Institutions Code section 388[1] asking the juvenile court to order return of the child to mother's custody or additional family reunification services. The juvenile court denied mother's petition at a section 366.26 hearing on October 10, 2024, which resulted in the appointment of a guardian and dismissal of the dependency matter. On appeal, mother contends the juvenile court erred in denying the petition. We find no abuse of discretion, and thus we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Initial Removal*

In March 2023, the Stanislaus County Community Services Agency (agency) received a referral alleging there were drugs accessible to the child in mother's home. Law enforcement found methamphetamine and marijuana in mother's purse. Mother was arrested for child endangerment. A social worker responded to mother's home, and the child was taken into protective custody.

During an interview with the social worker, mother admitted to marijuana use, but she did not respond to questions about methamphetamine use. Mother claimed the methamphetamine probably belonged to her boyfriend, Gabriel, and she was aware that Gabriel was using meth. Gabriel lived in the back house with mother and the child. The child's father, Brian R. (father) visited with the child almost daily, and he reported being aware of mother's methamphetamine and marijuana use.

The agency filed an original petition alleging the child was described by section 300, subdivision (b)(1). The petition alleged the child was at substantial risk of suffering serious physical harm as a result of mother's unresolved substance use issues.

---

[1] All further statutory references are to the Welfare and Institutions Code.

The petition further alleged that mother and father had a history of domestic violence in their relationship.

The agency's detention report set forth mother's child welfare history, which involved four substantiated referrals from 2006 to 2017. In September 2006, a half sibling was born with positive drug test results for methamphetamine. Mother was offered voluntary services, but she declined to participate. In December 2008, mother gave birth to a second half sibling, who was born with positive drug test results for marijuana. Mother admitted to dependence on marijuana, and she accepted voluntary family maintenance services. Mother and the half siblings' father refused to participate in treatment, and she tested positive for methamphetamine on two occasions.

In September 2016, mother admitted to using methamphetamine and marijuana during the child's birth. A drug screening was negative for mother, but the child tested positive for methamphetamine. The child's half siblings were living with their father for the past two years. Mother avoided contact with the investigating social worker, and she did not follow through with a safety plan. In June 2017, both mother and father admitted to domestic violence and past drug use. The agency verified that mother was participating in the "ARCH" program.

At the detention hearing held on March 27, 2023, the juvenile court detained the child from mother, ordered mother's visitation with the child to be supervised, and set a jurisdiction hearing for April 18, 2023.

***Jurisdiction and Disposition***

The agency's jurisdiction report recommended that the allegations in a first amended petition be found true. The agency's first amended petition included an additional allegation that the child tested positive for marijuana and methamphetamine exposure. The initial jurisdiction hearing was continued to provide father with additional time to review the report. The matter was reset for a combined jurisdiction and disposition hearing on May 16, 2023.

3.

The disposition report recommended the child be removed from mother's custody and family reunification services be provided to mother and father. The child was placed in a resource family home. She was adjusting well to her care providers and the other children in the home. Mother and the child were affectionate during supervised visits. The social worker had to talk to mother about hidden notes that were sent home with the child. Mother missed two substance use disorder assessments, and she was scheduled to begin her first parenting group on May 11, 2023. On April 5, 2023, mother tested positive for marijuana.

A social history interview was completed with mother on May 9, 2023. Mother did not have a relationship with the child's half siblings. She felt like she was unable to fight for her older daughters during a prior custody proceeding because she was using drugs. Mother denied having any mental health issues, but she acknowledged that she was involved in an abusive relationship after her relationship with father ended.

She reported her first use of methamphetamine was at 23 years old, and she continued her methamphetamine use "on and off" for seven years. Staying away from "everyone" helped mother abstain from drug use in the past, but she had never completed a substance use treatment program. Mother attributed her ability to abstain from drug use since the child's removal to a promise that she made to God and the child. Mother admitted to using substances when the child was not around, and she acknowledged that her drug use prevented her from enrolling the child in school. Mother's longest period of sobriety was for three years while she was in a relationship with the half siblings' father.

At the combined jurisdiction and disposition hearing, the juvenile court found the allegations in the amended petition true, ordered the child removed from mother's custody, and provided reunification services to mother and father. Mother's approved case plan consisted of a domestic violence assessment, individual counseling, a parenting program, substance use disorder assessment, and random drug testing. The service objectives of the case plan included meeting the child's needs and showing an ability to

4.

live free from illegal drugs and drug dependency. A six-month review hearing was set for November 9, 2023.

***Family Reunification Period***

The agency's six-month status review report, filed October 30, 2023, recommended that reunification services be continued for mother and father. As of the filing of the report, mother was participating in her domestic violence assessment, individual counseling, and parenting groups. Mother's substance use disorder assessment determined that she did not meet the diagnosis for a substance use disorder, and a drug test came back negative for all substances. There were no issues or concerns reported from mother's supervised visits with the child. At the six-month review hearing, the juvenile court ordered continued family reunification services for mother and father, and a 12-month review hearing was set for May 1, 2024.

The report prepared for the 12-month review hearing recommended that family reunification services be terminated for mother and father and a section 366.26 hearing be set. During the reporting period, mother missed five out of 10 individual counseling sessions, and she completed five parenting counseling sessions.

In December 2023, overnight visitation began between mother and the child. The agency worked with mother on different solutions to improve the child's attendance when mother dropped the child off at school late. On March 5, 2024, the child's teacher explained how continued absences were negatively impacting the child's education. The agency reduced mother's overnight visits to occur on the weekends.

On March 11, 2024, the child informed the social worker that she spent the night at Gabriel's home during the prior weekend overnight visit. Mother denied that she stayed at Gabriel's home, and the social worker requested that mother complete a drug test on March 15, 2024. Mother missed multiple drug tests before testing positive for amphetamine and methamphetamine on March 20, 2024. Visits were moved back to an

agency facility, and mother missed two of the weekly supervised visits on March 29, 2024 and April 12, 2024.

A re-referral was completed for a substance use disorder assessment on March 27, 2024, due to mother's positive drug test. However, the social worker was unable to reach mother because her phone was off in the weeks leading up to the 12-month review hearing. The social worker's assessment determined the child could not be returned home due to mother's substance use, inconsistency with counseling, and refusal to take responsibility for her actions. The juvenile court adopted the agency's recommendation at the 12-month review hearing held on May 17, 2024, and it terminated reunification services for mother and father. A section 366.26 hearing was scheduled for September 16, 2024.

### Combined Sections 366.26 and 388 Hearing

The section 366.26 report, filed by the agency on September 5, 2024, recommended that the juvenile court terminate the parental rights of mother and father and a plan of adoption be ordered. The child remained placed in the same resource family home since May 22, 2023, and the relative care providers were committed to a plan of adoption. The child was observed to be comfortable and bonded with the relative care providers. At seven years of age, the child was developmentally on track with no medical issues noted at her recent physical. Mother missed six of her 19 weekly supervised visits from April 2024 to August 2024. The social worker's assessment acknowledged that severing the child's relationship with mother could cause emotional instability. However, the agency believed parental rights should be terminated to provide timely permanency and stability to the child.

On September 10, 2024, mother filed a section 388 petition requesting the child be returned to her custody with family maintenance services. Alternatively, mother requested additional family reunification services. The petition alleged mother had been clean and sober since her March 20, 2024 positive drug test. Mother further claimed that

she was consistently attending her drug treatment program through a criminal case. She was attending parenting classes, maintaining employment, and ceased further contact with Gabriel. The child's best interest was alleged to be served because mother had a very close relationship with the child and remained sober since reunification services were terminated.

The juvenile court set the section 388 petition for a hearing on the same date as the upcoming section 366.26 hearing. Both hearings were continued to allow the agency to contact the child and confirm its recommendation for a permanent plan. The agency filed an addendum report on September 20, 2024, which recommended a permanent plan of legal guardianship without dependency for the child instead of adoption. The agency modified its recommendation after the child made it "abundantly clear" that she would like to continue to have a relationship with mother. The child wished that she could go back to her mother, but she understood that mother did not always act responsibly when providing care for her. The child desired the stability of her current placement, and she wanted to be a part of the care provider's family forever.

On October 10, 2024, the juvenile court held a contested hearing on mother's section 388 petition and the section 366.26 hearing. Mother was present and testified in support of her section 388 petition. She acknowledged her past mistakes while the child was having overnight visits, including: late drop-offs at school, exposure to her drug-using ex-boyfriend, and resumption of drug use during the reunification period. Mother testified that she was able to maintain her sobriety because she was learning about relationships and getting support from her family and work. She was holding employment, taking parenting classes, and attending a drug diversion program. Mother described her relationship with the child as "beautiful." Mother testified that she and the child missed each other, and the child told mother that she wanted to return home.

On cross-examination, mother admitted to methamphetamine use in April 2024. Mother began participating in a drug diversion program to clear her criminal record

approximately three months earlier. The program's enrollment form stated that mother would be terminated from the program after three absences, and mother had missed two classes. Mother explained that she had never previously been to a drug treatment program. She also testified that she was staying sober "by myself alone."

In closing argument, mother's counsel argued that mother demonstrated a substantial change in circumstances such that her request should be granted. Counsel for the child and agency argued that mother's petition should be denied due to a lack of changed circumstances. After hearing argument from all counsel, the juvenile court proceeded to its ruling on the section 388 petition. The juvenile court commended mother on her steps to maintain her sobriety, but it concluded that mother's circumstances were "changing" as opposed to "changed." In relation to the child's best interest, the juvenile court reasoned as follows:

> "[The child]'s best interests are served by having stability and permanence to the extent that she's not going to go back and forth, that she doesn't have to currently be stressed or worried about [mother], that that stability and that permanence is there for her, and she still may be able to maintain a relationship with mother as long as she chooses to."

Mother's section 388 petition was denied, and a plan of legal guardianship was established without ongoing dependency.

## DISCUSSION

Mother contends the juvenile court erred when it failed to grant her section 388 petition requesting either family maintenance services or additional reunification services. She argues that her petition and supporting documentation showed a change in her circumstances and her request was in the child's best interests.

### A. Legal Principles

A petition to modify a juvenile court order under section 388 must allege facts showing new evidence or changed circumstances exist and changing the order will serve the child's best interests. (§ 388, subd. (a); *In re Nolan W.* (2009) 45 Cal.4th 1217, 1235.)

8.

The petitioner has the burden of proof by a preponderance of the evidence. (Cal. Rules of Court, rule 5.570(h)(1)(D).) In assessing the petition, the juvenile court may consider the entire history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

Section 388 serves as an " 'escape mechanism' when parents complete a reformation in the short, final period after the termination of reunification services but before the actual termination of parental rights." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 528 (*Kimberly F.*).) "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

"Not every change in circumstance can justify modification of a prior order. [Citation.] The change in circumstances must relate to the purpose of the order and be such that the modification of the prior order is appropriate. [Citations.] In other words, the problem that initially brought the child within the dependency system must be removed or ameliorated. [Citations.] The change in circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged order." (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.) "A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)

In assessing the petition, the juvenile court may consider the entire history of the case. (*In re Justice P.*, *supra*, 123 Cal.App.4th at p. 189.) When determining whether a modification under section 388 would be in the best interests of the child, courts have considered several factors, including but not limited to: "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent

9.

and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*Kimberly F.*, *supra*, 56 Cal.App.4th at p. 532.)

### B. Standard of Review

We review the denial of a section 388 petition after an evidentiary hearing for abuse of discretion. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 318.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." ' " (*Id.* at pp. 318–319.) " 'The denial of a section 388 motion rarely merits reversal as an abuse of discretion.' " (*In re Daniel C.* (2006) 141 Cal.App.4th 1438, 1445.) Where there is conflicting evidence, we reverse only if the evidence compels a finding for the appellant as a matter of law. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527–1529.)

### C. Analysis

In the present case, the juvenile court determined that mother did not prove the existence of a change in circumstance or the child's best interests were served by granting her request. Mother provided evidence that she was participating in a drug diversion program through her criminal matter and parenting classes. These facts were understood and acknowledged by the court. However, it is irrelevant that there may be evidence which would support a conclusion contrary to that of the court. (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1292.) The court denied mother's section 388 petition because it did not find that mother's circumstances were "changed" or that additional services were in the child's best interests, given the child's need for permanency. Thus, the court properly focused on the child's permanency and stability when it considered mother's request to delay the child's proposed permanent plan.

Mother's argument that her bond with the child and participation in substance use treatment required resumption of reunification efforts ignores the legally required shift in focus once her reunification services were terminated. Mother's section 388 petition contemplated further delay in permanency for a child who had remained in out-of-home

10.

care for more than 18 months. Although mother had begun making progress by participating in substance use treatment and parenting classes, the circumstances before the juvenile court showed that mother was still in the early stages of addressing her substance use problem. Mother's issues with using substances dated back to at least August 2006, based upon her use of drugs at the time of a half sibling's birth.

We acknowledge that mother's continued progress in treating her substance use problem indicates that her circumstances are changing, and mother's continued efforts are to be commended. However, mother must demonstrate "*changed*, not changing, circumstances." (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.) Thus, it was reasonable for the juvenile court to conclude mother's recent efforts in the months prior to the termination hearing evidenced "changing" rather than "changed" circumstances, particularly in light of her claim of sobriety for less than six months. (See *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423–424 [200 days of sobriety not enough to demonstrate changed circumstances given the parent's history]; *Kimberly F.*, *supra*, 56 Cal.App.4th at p. 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform."].)

Because mother did not make a sufficient showing that her circumstances had changed in the four months following the review hearing, the juvenile court properly denied her section 388 petition. Mother had not yet demonstrated that she could complete a drug program and maintain her sobriety while parenting the child outside of a controlled environment. In the context of an 18-month dependency period for the child, mother's recent efforts to participate in programs demonstrated changing, but not changed, circumstances.

The child was placed with relative care providers who were committed to a plan of guardianship, which would allow mother and the child to maintain their relationship in a safe environment. Considering the child's young age and heightened need for permanency and stability, and the inability of mother to consistently demonstrate her

11.

commitment to sobriety throughout the proceedings, the juvenile court's decision to forego return of the child or additional reunification efforts was not arbitrary or beyond the bounds of reason. Accordingly, we find the court did not abuse its discretion in denying the section 388 petition.

## DISPOSITION

The juvenile court's order is affirmed.